1

2

3

4

5

6

7

8                 **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11

12  AMERICAN ZURICH INSURANCE      )   2:14-cv-03779-RSWL-AS
    COMPANY and ZURICH AMERICAN    )
13  INSURANCE COMPANY,             )
                                   )   **ORDER re: Country**
14                                 )   **Villa's Motion for**
                  Plaintiffs,      )   **Partial Summary Judgment**
15                                 )   [75]
                                   )
16       v.                        )
                                   )
17  COUNTRY VILLA SERVICE CORP.    )
    dba COUNTRY VILLA HEALTH       )
18  SERVICES,                      )
                                   )
19                                 )
                  Defendant.       )
20  _____)
    AND RELATED COUNTER-CLAIMS     )
21  and THIRD PARTY ACTIONS        )
                                   )
22  _____)

23       Currently before the Court is

24  Defendant/Counterclaimant Country Villa Service Corp.'s

25  ("Country Villa") Motion for Partial Summary Judgment

26  [75], in which Country Villa requests partial summary

27  judgment in its favor as to Country Villa's Fifth Count

28  for Declaratory Relief in Country Villa's Counterclaim

                                1

[20] against Plaintiffs/Counterdefendants American Zurich Insurance Company and Zurich American Insurance Company (collectively, "Zurich").  Country Villa's Mot. Part. Summ. J. Mem. P&A ("Mot."), ECF No. 75-1.

The Court, having reviewed all papers submitted and pertaining to Country Villa's Motion for Partial Summary Judgment [75], **NOW FINDS AND RULES AS FOLLOWS:** The Court **GRANTS** Country Villa's Motion [75].

## I. FINDINGS OF FACT

1. Plaintiff American Zurich Insurance Company is an Illinois corporation engaged in the insurance business with a principal place of business in Illinois.  Compl. ¶ 3, ECF No. 1.

2. Plaintiff Zurich American Insurance Company is a corporation incorporated in either New York or Illinois that is engaged in the insurance business with a principal place of business in Illinois. Compl. ¶ 4; Answer ¶ 4, ECF No. 19; Countercl. ¶ 4, ECF No. 20; Ans. to Countercl. ¶ 3, ECF No. 69.

3. Country Villa is a California corporation with a principal place of business in California that is in the business of managing skilled nursing care facilities located in California.  Compl. ¶¶ 5, 8; Answer ¶¶ 5, 8 (undisputed); Countercl. ¶ 3.

4. The amount in controversy exceeds $75,000.  Compl. ¶¶ 1, 50; Countercl. ¶¶ 1-2.

5. Zurich provided seven years of workers' compensation insurance to Country Villa, beginning

January 31, 2004, and ending January 31, 2011.
Zurich's Statement of Facts ("Zurich's Facts") ¶ 1,
ECF No. 79-1.

6.   Zurich and Country Villa ("the parties") entered
     into separate insurance policy contracts ("Policy"
     or "Policies") for each of the seven policy years.
     Compl. ¶ 10, Ex. A at *10, *46, *82, *117, *154,
     *193, *229, ECF No. 1-1; Stip. re: Program
     Agreements ("Stip.") ¶¶ 1-2, ECF No. 72.

7.   Each of the Policies contains a standard-form
     provision that states: "The terms of this policy
     may not be changed or waived except by endorsement
     issued by us to be part of the policy."[1]  Compl.,
     Ex. A at *230; Zurich's Facts ¶ 2 (undisputed).

8.   Each of the Policies issued to Country Villa
     include an attached Large Deductible Endorsement,
     which is two pages in length and sets forth two
     definitions: "Allocated loss adjustment expense"
     and "Claim."  Compl., Ex. A at *62-63, *238, *243-
     44; see Zurich's Facts ¶ 3 (undisputed); id. ¶ 11
     (dispute irrelevant).

9.   Under the Large Deductible Endorsements, Country
     Villa agreed to reimburse Zurich, up to the

_____

[1] The Court took judicial notice of the existence and
content of the Policies, Incurred Deductible Agreements, and
Specifications to the Incurred Deductible Agreements, attached to
the Complaint [1] as Exhibits A-B, in the Court's October 2,
2014, Order [59] regarding Zurich's Motion to Dismiss Certain
Counts of Counterclaim.  Oct. 2, 2014, Order re: Zurich's Mot.
Dismiss 13:28-14:6, ECF No. 59.

deductible amount, the sum of (1) all covered
benefits and damages Zurich paid for the injured
workers' benefit, (2) all "Allocated loss
adjustment expense," and (3) all assessments
incurred by Zurich related to the deductible
amount.  Compl., Ex. A, at *90-*91; Zurich's Facts
¶ 13 (undisputed).

10. Zurich and Country Villa entered into an Incurred
Deductible Agreement in 2004 and 2005, with the
2005 Incurred Deductible Agreement ("IDA")
continuing such that the parties entered into
separate Specifications to the 2005 IDA each
subsequent policy year.  Compl., Ex. B; see
Zurich's Facts ¶ 4 (undisputed).

11. The parties entered into the IDAs and
Specifications after the effective date of the
related Policy, but the IDAs and Specifications
are, by their terms, retroactively effective on the
start date of the related Policy.  Compl., Ex. B at
*278, *286, *298, *331, *336; see Zurich's Facts ¶
16 (undisputed).

12. The IDAs without the Specifications are twelve
pages in length, and with the Specifications, are
around twenty pages in length.  Compl., Ex. B.

13. The IDAs state: "This Agreement governs the
structure and operation of and the duties and
obligations of each party to this Program and
supersedes any Deductible endorsements to the

1    Policy(ies), prior communications, negotiations,
2    participating plans or letters of election."
3    Zurich's Facts ¶ 5 (undisputed); Compl., Ex. B at
4    *267.
5    14.  The IDAs state the "Policy(ies) . . . including all
6    endorsements, extensions, renewals and/or rewrites"
7    "stated in the Specifications" are "subject to this
8    Agreement."  Compl., Ex. B at *267.
9    15.  The IDAs state that the "purpose of this Agreement
10   is to outline (a) the scope, description and
11   structure of the Incurred Deductible Program
12   ("Program") You and We have entered into and (b)
13   the duties and obligations of each party with
14   respect to this Program."  Id.
15   16.  The IDAs state in the "Program Description"
16   section: "Under the Program, We have selected a
17   Third Party Administrator ("TPA") at Your request
18   to handle and pay the claims presented in
19   accordance with the provisions of the Policy(ies).
20   You assume the risk within the Deductible Amount
21   and We accept the risk transfer excess of the
22   Deductible Amount(s) and the Aggregate Deductible .
23   . . up to the limits of liability under the
24   Policy(ies)."  Id. at *268.
25   17.  The IDAs explain: "The Specifications state the (1)
26   amount of Your initial payment to Us with respect
27   to the Deductible Premium and the expected Incurred
28   Losses within the Deductible Amount(s), as

5

1    determined by Us, plus related expenses and
2    assessments; and (2) the timing and method of Our
3    adjustment of the Incurred Losses, plus related
4    expenses and assessments.  You agree to and shall
5    remit to Us all amounts when due, as stated in the
6    Specifications.  The amounts paid by You for Your
7    obligations within the Deductible Amount(s) will be
8    held by Us in a Loss Reimbursement Fund."  <u>Id.</u>
9  18. The IDAs set forth definitions for the following
10   terms, among others:
11   (1) "Allocated Loss Adjustment Expense" ("ALAE"),
12   which is "an expense directly allocable to a
13   specific claim";
14   (2) "Aggregate Deductible," which is "the greatest
15   amount for the Program term stated in the
16   Specifications of Paid Losses within the Deductible
17   Amount(s) and, if applicable in accordance with the
18   Specifications, Paid ALAE, You are obligated to
19   reimburse Us for under the Policy(ies)";
20   (3) "Aggregate Deductible Charge," which is "the
21   premium You pay Us for limiting the losses You are
22   obligated to reimburse Us for to an Aggregate
23   Deductible amount";
24   (4) "Claim Administration Expenses," which are
25   "expenses charged by the TPA in addition to Claim
26   Handling Fees that include but are not limited to .
27   . . any other expenses relating to the servicing,
28   management and reporting of the claims under the

Policy(ies)";

(5) "Deductible Amount(s)," which "is the amount You are obligated to reimburse Us for each occurrence, accident or claim under the Policy(ies) as stated in the Specifications";

(6) "Excess Premium," which is "the premium You pay to Us for limiting the losses You are obligated to reimburse Us for to the Deductible Amount(s) and for Our assumptions of the risk transfer excess of the Deductible Amount(s) up to the limits of liability under the Policy(ies)";

(7) "Incurred Loss," which is "a Paid Loss plus a Loss Reserve under the Policy(ies)";

(8) "Loss Reimbursement Fund," which "is a non-interest bearing account where Your funds are held by Us to provide for the payment of Your obligations within the Deductible Amount(s) under the Policy(ies)";

(9) "Other Special Charges," which "shall include but not be limited to additional premium taxes, new or modified assessment, premium and loss based assessments, administrative, statutory or court-ordered fines or penalties not the result of Our negligence, any expenses We incur to collect from You amounts past due and to enforce any of the provisions of this Agreement";

(10) "Paid ALAE," which "is a payment made by Us for ALAE under the Policy(ies)";

1   (11) "Standard Premium"; and

2   (12) "Default."  Id. at *269-72.

3  19. The IDAs state that "[i]n the event of a Default or

4       a material change in Your financial condition . .

5       ., We may, out Our option, terminate the financing

6       portion of the Program" and "[t]he amount

7       immediately due and payable to Us will be

8       determined by Us using . . the full standard

9       Premium by converting the Program to a guaranteed

10      cost rating plan using Our manual rates in effect

11      as of the Program effective date."  Id. at *276.

12 20. Specifications to the IDAs repeat the $500,000

13      large deductible amount set forth in the Large

14      Deductible Endorsement in the Policy(ies) and set

15      forth how "ALAE" "will be handled and paid."  Id.

16      at *279-80.

17 21. Specifications to the IDAs set forth the

18      "Deductible Premium" amount, the "Premium

19      Surcharge" amount, and the "Unallocated Loss

20      Adjustment Expense per claim."  Id. at *280-82.

21 22. Neither the Large Deductible Endorsements, nor the

22      Policies, contain any mention of the terms

23      Aggregate Deductible, ALAE Reserve, Default,

24      Incurred ALAE, Loss Development Factor, Loss

25      Reimbursement Fund, Loss Reserve, Paid ALAE, or

26      Arbitration.   Zurich's Facts ¶ 15 (undisputed).

27 23. Zurich did not file the IDAs or Specifications with

28      the Workers' Compensation Insurance Rating Bureau

1    ("WCIRB") before they were issued or entered into

2    by Zurich and Country Villa.  Zurich's Facts ¶ 6

3    (undisputed); Stip. ¶ 4.

4 24. The California Department of Insurance ("CDI") did

5    not approve the IDAs or Specifications, or any

6    exemplars or copies thereof, before they were

7    issued or entered into by the parties.  Zurich's

8    Facts ¶ 7 (undisputed); Stip. ¶ 5.

9 25. The California Insurance Commissioner

10    ("Commissioner") has stated that when a side

11    agreement to a workers' compensation insurance

12    contract "govern[s] integral aspects of the

13    insurance relationship stemming from the treatment

14    of deductibles," the side agreement is required to

15    be filed under at least Cal. Ins. Code § 11658.

16    Appl. of Insurance Commissioner to File Amicus

17    Curiae Brief, DMS Serv. ("Commissioner Appl., DMS

18    Serv."), No.B235819, 2011 WL 6345401, at *4 (Cal.

19    Ct. App. Dec. 14, 2011) (Appellate Brief); see id.

20    at *1-*11.

21 26. The CDI's February 2011 Directive explained that

22    collateral agreements affecting workers'

23    compensation insurance obligations "are prohibited

24    unless they are attached to the policy" under Cal.

25    Code Regs., tit. 10, § 2268.  CDI Feb. 14, 2011,

26    Directive to WCIRB, at 2, ECF No. 20-2 (Exhibit 2

27    to Countercl.).

28 27. It is undisputed that an actual controversy exists

1    between Zurich and Country Villa regarding the
2    enforceability of the IDAs under California law.

## II. CONCLUSIONS OF LAW

1. Summary judgment is appropriate when the movant
   shows that there is no genuine dispute as to any
   material fact and the movant is entitled to
   judgment as a matter of law.  Fed. R. Civ. P.
   56(a).

2. Under Rule 56, the party moving for summary
   judgment has the initial burden to show "no genuine
   dispute as to any material fact."  Fed. R. Civ. P.
   56(a); see Nissan Fire & Marine Ins. Co. v. Fritz
   Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000).  The
   burden then shifts to the non-moving party to
   produce admissible evidence showing a triable issue
   of fact.  Nissan Fire & Marine Ins., 210 F.3d at
   1102-03; see Fed. R. Civ. P. 56(a).

3. Disputed or unclear law or matters of law are not
   genuine disputes "as to any material fact."
   Sarviss v. Gen. Dynamics Info. Tech., Inc., 663 F.
   Supp. 2d 883, 899 n.16 (C.D. Cal. 2009) (stating
   that "[d]espite Plaintiff's assertion to the
   contrary, unclear law is not a 'genuine issue of
   material fact' that would preclude summary
   judgment).[2]

---

[2] See also Hayes v. Cnty. of San Diego, 736 F.3d 1223, 1236
(9th Cir. 2013) (stating that the court "acknowledge[d] that the
district court's summary judgment ruling 'was undertaken at a
time when the law . . . was unclear' and that the district court

10

4.   California law governs when a federal district
     court is sitting in diversity and the issue
     involves the substantive law of California.[3]   See
     Conestoga Serv. Corp. v. Exec. Risk Indemnity,
     Inc., 312 F.3d 976, 980-81 (9th Cir. 2002).

5.   When no published California opinion controls,
     federal courts may consider unpublished California
     opinions as persuasive authority.   Emp'rs Ins. of
     Wausau v. Granite St. Ins. Co., 330 F.3d 1214, 1220
     n.8 (9th Cir. 2003) (stating that the court "may
     consider unpublished state decisions, even though
     such opinions have no precedential value" and that
     unpublished opinions, "while certainly not
     dispositive of how the California Supreme Court
     would rule," may still "lend[] support" to a
     certain position regarding California law);
     Washington v. Cal. City Correction Ctr., 871 F.
     Supp. 2d 1010, 1028 n.3 (E.D. Cal. 2012) ("The
     Court may cite unpublished California appellate
     decisions as persuasive authority.").

6.   "A federal court applying California law must apply

---

could not be 'clairvoyant or prescient'"); SEC v. Murphy, 626
F.2d 633, 653 (9th Cir. 1980) (noting, without rejection, that,
when law was unclear as to scienter requirement, the district
court properly ruled on summary judgment that scienter was
required); In re ATM Fee Antitrust Litig., 554 F. Supp. 2d 1003,
1007 (N.D. Cal. 2008) (granting a motion for partial summary
judgment by determining "'one of the darkest corners of antitrust
law'" that was "unsettled, unclear, unwieldy, and unequivocally
complex" after "substantial rumination on the legal issues").

[3] It is undisputed that California law applies.

11

the law as it believes the California Supreme Court
would apply it," and "[i]n the absence of a
controlling California Supreme Court decision, the
panel must predict how the California Supreme Court
would decide the issue, using intermediate
appellate court decisions, statutes, and decisions
from other jurisdictions as interpretive aids."
<u>Gravquick A/S v. Trimble Navigation Int'l, Ltd.</u>,
323 F.3d 1219, 1222 (9th Cir. 2003).

7. The interpretation of an insurance policy or
contract is a question of law. <u>Conestoga</u>, 312 F.3d
at 981.

8. In California, "the construction of a statute by
officials charged with its administration,
including their interpretation of the authority
invested in them to implement and carry out its
provisions, is entitled to great weight." <u>Ass'n</u>
<u>for Retarded Citizens v. Dep't of Developmental</u>
<u>Serv.</u>, 696 P.2d 150, 38 Cal.3d 384, 391 (1985).

9. Section 11658 of the California Insurance Code
states in relevant part: "a) A workers'
compensation insurance policy or endorsement shall
not be issued by an insurer to any person in this
state unless the insurer files a copy of the form
or endorsement with the rating organization
pursuant to subdivision (e) of Section 11750.3

1  [i.e., the WCIRB][4] and 30 days have expired from
2  the date the form or endorsement is received by the
3  commissioner from the rating organization without
4  notice from the commissioner, unless the
5  commissioner gives written approval of the form or
6  endorsement prior to that time.
7  (b) If the commissioner notifies the insurer that
8  the filed form or endorsement does not comply with
9  the requirements of law, specifying the reasons for
10  his or her opinion, it is unlawful for the insurer
11  to issue any policy or endorsement in that form."
12  Cal. Ins. Code § 11658.
13  10. California Code of Regulations, title 10, § 2268
14  states in relevant part that "[n]o collateral
15  agreements modifying the obligation of either the
16  insured or the insurer shall be made unless
17  attached to and made a part of the policy."  Cal.
18  Code Regs., tit. 10, § 2268.
19  11. California Code of Regulations, title 10, § 2218
20  requires that "[a]ll workers' compensation
21  insurance forms must be submitted in duplicate to
22  the Workers' Compensation Insurance Rating Bureau
23  of California for preliminary inspection," and that
24  the "Bureau shall review such forms and submit them
25  to the Commissioner for final action."  Cal. Code
26
27

28  [4] See Cal. Ins. Code § 11750.3; Ceradyne, Inc. v. Argonaut Ins. Co., No. No. G039873, 2009 WL 1526071, at *5 (Cal. Ct. App. Unpub. June 2, 2009).

1    Regs., tit. 10, § 2218.

2  12. An endorsement to an insurance policy "is an

3      amendment to or modification of an existing policy

4      of insurance" that "may alter or vary any term or

5      condition of the policy" and that "may be attached

6      to a policy at its inception or added during the

7      term of the policy." Adams v. Explorer Ins. Co.,

8      132 Cal. Rptr. 2d 24, 33 (Ct. App. 2003).

9  13. An endorsement to a workers' compensation insurance

10     policy, for purposes of Cal. Ins. Code § 11658, may

11     concern "matters unrelated to the description of

12     [the insurer's] indemnity and insurance

13     obligations." Ceradyne, Inc. v. Argonaut Ins. Co.,

14     No. No. G039873, 2009 WL 1526071, at *7 (Cal. Ct.

15     App. Unpub. June 2, 2009); see Monarch Consulting,

16     Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,

17     Pa., 993 N.Y.S.2d 275, 289 (App. Div. 2014).

18  14. The IDAs are endorsements to the Policies between

19     the parties for purposes of Cal. Ins. Code § 11658,

20     and are "collateral agreements modifying the

21     obligation of either the insured or the insurer"

22     for purposes of Cal. Code Regs., tit. 10, § 2268.

23  15. The IDAs were required to be filed with the WCIRB

24     under Cal. Ins. Code § 11658 and "attached to and

25     made a part of the policy" under Cal. Code Regs.,

26     tit. 10, § 2268.

27  16. Because Zurich failed to file the IDAs with the

28     WCIRB under Cal. Ins. Code § 11658, and failed to

14

1      attach the IDAs to the Policies under Cal. Code

2      Regs., tit. 10, § 2268, the IDAs are illegal and

3      void as a matter of law.

4   17. Enforcing the illegal IDAs on equitable grounds is

5      inappropriate under the circumstances of this case.

6   18. The IDAs are illegal, void, and unenforceable in

7      their entirety.

8   19. The federal Declaratory Judgment Act provides that

9      "[i]n a case of actual controversy within its

10      jurisdiction . . . any court of the United States .

11      . . may declare the rights and other legal

12      relations of any interested party seeking such

13      declaration, whether or not further relief is or

14      could be sought."  28 U.S.C. § 2201(a).[5]

### III. BACKGROUND

[5] Though district courts in the Ninth Circuit "have at times applied the California Declaratory Relief Act when sitting in diversity," "the Ninth Circuit has indicated, although not explicitly held, that the federal Declaratory Judgment Act should apply," and the U.S. Supreme Court "has emphasized the procedural nature of the Declaratory Judgment Act," but, either way, "whether the state or federal statute applies makes little difference as a practical matter, as the two statutes are broadly equivalent."  In re Adobe Sys., Inc. Privacy Litig., Case No. 13-CV-05226-LHK, 2014 WL 4379916, at *1, --F. Supp. 3d-- (N.D. Cal. Sept. 4, 2014); see 28 U.S.C. § 2201(a); Cal. Code Civ. P. § 1060; Market Lofts Cmty. Ass'n v. 9th St. Market Lofts, LLC, 166 Cal. Rptr. 3d 469, 474-75 (Ct. App. 2014) (stating that California Code of Civil Procedure section 1060 requires merely that there be an actual controversy relating to the legal rights and duties of the respective parties"); see also In re Arbitration Between Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Personnel Plus, Inc., 954 F. Supp. 2d 239, 247-48 (S.D.N.Y. 2013)("Because there is no conflict, the McCarran-Ferguson Act does not come into play, and the Court applies the FAA. Thus, the question of the Payment Agreement's enforceability must be submitted to arbitration.").

**A.   Factual Background**

Zurich contracted with Country Villa to provide workers' compensation insurance to Country Villa for seven consecutive policy years, from 2004 to 2011.  <u>Id.</u> ¶ 10.  For each of the seven policy years, the parties entered into insurance policy contracts ("Policy," "Policy(ies)," or "Policies") and, later, separate IDAs/IDA Specifications ("IDA" includes IDA and any related Specifications).  Countercl. ¶¶ 11, 75, 76. Zurich admits it did not file the IDAs with the WCIRB and that the IDAs were not approved by the CDI prior to their issuance.  Stip. ¶¶ 4-5.

**B. Procedural Background**

Zurich filed this Action [1] against Country Villa on May 16, 2014, claiming breach of contract under California law for Country Villa's alleged breach of insurance policies, related contracts, and a promissory note.  On July 1, 2014, Country Villa filed a Counter-claim [20] against Zurich for contract-related claims and declaratory relief.  Country Villa filed the present Motion for Partial Summary Judgment [75] on April 6, 2015.  The Opposition [79] and Reply [80] were timely filed.  <u>See</u> Dckt. ## 78-80.

**IV. DISCUSSION**

**A.   Country Villa's Evidentiary Objections**

Country Villa objects to four declarations attached to and in support of Zurich's Opposition.

1.   <u>Objection to Terzinski Declaration [80-1]</u>

Country Villa objects to portions of the Terzinski Declaration that relate to the "2013 filings" made by Zurich to the WCIRB on grounds of irrelevance because "any submission to the [WCIRB]. . . in July 2013 is not a fact of consequence in determining the motion for partial summary judgment." Country Villa's Evid. Objs. to Terzinski Decl. 2:7-14, ECF No. 80-1. The Court agrees; Zurich's 2013 filings are irrelevant to whether the IDAs are void under California law or whether the IDAs should be enforced in equity if found void. As such, the Court **SUSTAINS** Country Villa's objections to the Terzinski Declaration.

2.   Objection to Bartell Declaration [80-2]

Country Villa objects on grounds of irrelevance to portions of the Bartell Declaration that relate to the "1995 filings" Zurich made with the CDI. Zurich's 1995 filings are irrelevant to the determination of Country Villa's Motion, as Zurich fails to show that its 1995 filings were the equivalent of submitting the IDAs to the WCIRB, as required by Section 11658; or that its 1995 filings otherwise satisfy Cal. Ins. Code § 11658 and Cal. Code Regs., tit. 10, § 2268. The 1995 filings are also irrelevant to whether the IDAs, if found void, should nevertheless be enforced. The Court **SUSTAINS** Country Villa's objections to the Bartell Declaration.

3.   Objection to Knoebel Declaration [80-3]

Country Villa objects to specific paragraphs of the Knoebel Declaration on grounds of irrelevance, best

evidence, and improper legal conclusion, among others.

The Court **SUSTAINS** Country Villa's evidentiary objections to the following portions of the Knoebel Declaration on the basis of irrelevance, Best Evidence, or improper legal conclusion: paragraphs 7-9 and 11-12, all of paragraph 13 except the first sentence, and paragraphs 14-16 and 19-26.

The Court **OVERRULES** the remainder of Country Villa's objections to the Knoebel Declaration either because the evidence is relevant or because the Court need not rely on the objected-to evidence to determine the present Motion.

4.   <u>Objection to Young Declaration [80-4]</u>

Country Villa objects to the entire Young Declaration on the basis of, among other grounds, irrelevance.  The Court **SUSTAINS** Country Villa's objections to the following portions of the Young Declaration on the basis of irrelevance:

1) Evidence related to Zurich's two Rate Filings made in 1995, Young Decl. Supp'g Opp'n ¶¶ 2-3, Exs. A-B, ECF No. 79-4;

2) Evidence related the Bankruptcy Court filing, <u>In re Country Villa Nursing Center, Inc.</u>, Case No. 8:14-bk-11364-CB, Young Decl. Supp'g Opp'n ¶ 5, Ex. C

3) Evidence related to the copied page from *Accounting Practices & Procedures Manual*, Young Decl. Supp'g Opp'n ¶ 9, Ex. G; and

4) Evidence related to the California Assembly

Committee Reports on Assembly Bill No. 2490 (2009-2010 Regular Session), Young Decl. ¶¶ 11-12, Exs. H-I, which is irrelevant for several reasons, but primarily because the Reports have nothing to do with any law relevant to determining the present Motion.

The Court **OVERRULES** the remainder of Country Villa's objections to the Young Declaration.

**B.  Zurich's Rule 56(d) Request**

Zurich requests a denial of Country Villa's Motion for Partial Summary Judgment so that Zurich may engage in additional discovery, which, Zurich claims, "will raise genuine issues of material fact."  Young Decl. 56(d) ¶ 10.  Upon review of Zurich's Rule 56(d) Request, the Court finds that, even if the evidence sought was discovered, such evidence would not raise a "genuine issue of material fact" relevant to the Court's determination of the present Motion.  The Court **DENIES** Zurich's Rule 56(d) request.

**C.  Parties' Requests for Judicial Notice**

In diversity cases, judicial notice is governed by the Federal Rules of Evidence.  <u>Alimena v. Vericrest Fin., Inc.</u>, No. S-12-0901, 2012 WL 66512001, at *4 n.8 (E.D. Cal. Dec. 20, 2012); <u>Wray v. Gregory</u>, 61 F.3d 1414, 1417 (9th Cir. 1995).  A court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known . . .; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R.

Evid. 201(b).  A court "must" take judicial notice "if
a party requests it and the court is supplied with the
necessary information."  Fed. R. Evid. 201(c)(2).

     1.  <u>Country Villa's RJN [75-3]</u>

    Country Villa requests judicial notice of the
following:

1) <u>In re Matter of the Licenses and Licensing Rights of
American Zurich Insurance Company and Zurich American
Insurance Company of Illinois</u>, File No. DISP-2011-
00811, before the Insurance Commissioner of the State
of California, Notice of Hearing and Order to Show
Cause, dated February 27, 2012.  Country Villa's RJN ¶
1, Ex. 1.

2) <u>In re Matter of the Licenses and Licensing Rights of
American Zurich Insurance Company and Zurich American
Insurance Company of Illinois</u>, File No. DISP-2011-
00811, before the Insurance Commissioner of the State
of California, Settlement Agreement, dated July 11,
2013.  <u>Id.</u> ¶ 2, Ex. 2.

3) Notice of Proposed Action and Notice of Public
Hearing, Workers' Compensation Policy Forms, California
Department of Insurance, Reg. File No. REF-2014-00014,
dated December 9, 2014.  <u>Id.</u> ¶ 3, Ex. 3.

4) Initial Statement of Reasons, Proposed Amendments to
Workers' Compensation Policy Forms, California
Department of Insurance, Reg. File No. REF-2014-00014,
dated December 9, 2014.  <u>Id.</u> ¶ 4, Ex. 4.

5) Text of Regulation, Workers' Compensation Policy

Forms, California Department of Insurance, Reg. File No. REF-2014-00014, dated December 9, 2014. Id. ¶ 5, Ex. 5.

Because the fact of the existence and content of the above documents is a fact "not subject to reasonable dispute" because the fact of the above documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," the Court **GRANTS** Country Villa's Request for Judicial Notice in its entirety, taking judicial notice of the existence and content of the above documents,[6] attached as Exhibits 1 through 5 to Country Villa's Request for Judicial Notice.[7]

2. Zurich's RJN [79-2]

Zurich requests judicial notice of nine documents, some of which are not relevant to the present Motion.

The Court **DENIES** Zurich's request for judicial notice of the following exhibits because they are

---

[6] The Court previously took judicial notice of Exhibits 1 through 2, as well the underlying insurance policies and IDAs, in the Court's October 2, 2014, Order re: Zurich's Motion to Dismiss [59]. Zurich did not oppose judicial notice of these documents. Dckt. # 59 at 12:25-15:10.

[7] See Story v. Mammoth Mountain Ski Area, LLC, No. 2:14-cv-02422-JAM-DAD, 2015 WL 2339437, at *1 (E.D. Cal. May 13, 2015) (stating that "Federal Rule of Evidence 201 permits courts to take judicial notice of matters that 'can be accurately verified and readily determined from sources whose accuracy cannot be reasonably questioned,'" and noting that "[d]ocuments that 'are administered by[,] or publicly filed with[,] [an] administrative agency' are properly subject to judicial notice under Rule 201").

irrelevant to determining the present Motion,[8] as
previously discussed above:

1) Zurich's two Rate Filing Forms filed with the CDI in
1995.   Zurich RJN ¶¶ 1-2, Ex. A-B.

2) In re Country Villa Nursing Center Inc., Case No.
8:14-bk-11364-CB.   Zurich RJN ¶ 3, Ex. C.

3) Accounting Practices & Procedures Manual 65-8.
Zurich RJN ¶ 7, Ex. G.

4) California Committee Reports, Analysis of California
Assembly Bill No. 2490 (2009-2010 Regular Session).
Zurich RJN ¶¶ 8-9, Ex. H-I.

The Court **GRANTS** Zurich's request for judicial
notice as to the following exhibits because their
existence and content are facts that can be accurately
and readily determined from sources whose accuracy
cannot reasonably be questioned:

1) "Civil Minutes-General," Healthsmart Pac. Inc. v.
Zurich Am. Ins. Co., Case No. 08-cv-01207-JVS-RC (C.D.
Cal. Feb. 20, 2009), ECF No. 31.   Zurich's RJN ¶ 4, Ex.
D.

2) "Ruling Motion to Compel Arbitration and Stay
Proceedings," DMS Serv., LLC v. Zurich Am. Ins. Co.,
Case No. EC 055245 (Cal. Sup. Ct. Aug. 5, 2011).
Zurich's RJN ¶ 5, Ex. E.

3) "Appeals Court Docket" for Monarch Consulting Inc.
v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., Case

---

[8] See Story, 2015 WL 2339437, at *1 (denying a request for
judicial notice when the material underlying the request was
found not relevant to the issues presented by the motion).

22

1   No. APL-2014-00271 (N.Y. App. Div.), as of Apr. 17,
2   2015.  Zurich's RJN ¶ 6, Ex. F.
3   **D.   Partial Summary Judgment for Declaratory Relief**
4        1.  <u>Legal Standard</u>
5        A "court shall grant summary judgment" when the
6   movant "shows that there is no genuine dispute as to
7   any material fact and the movant is entitled to
8   judgment as a matter of law."  Fed. R. Civ. P. 56(a).
9   The party moving for summary judgment has the initial
10  burden to show "no genuine dispute as to any material
11  fact."  Fed. R. Civ. P. 56(a); <u>see</u> <u>Fritz</u>, 210 F.3d at
12  1102-03.  The burden then shifts to the non-moving
13  party to produce admissible evidence showing a triable
14  issue of fact.  <u>Fritz</u>, 210 F.3d at 1102-03; <u>see</u> Fed. R.
15  Civ. P. 56(a).  Unclear law or disputed matters of law
16  are not genuine disputes "as to any material fact."
17  <u>Sarviss</u>, 663 F. Supp. 2d at 899 n.16.
18       2.  <u>Analysis</u>
19       County Villa's Motion for Partial Summary Judgment
20  [75] regards only the Fifth Count of Country Villa's
21  Counterclaim, which requests a judicial declaration
22  that the IDAs "are void and unenforceable" under
23  California law because Zurich failed to file the IDAs
24  with the WCIRB, as required by at least Cal. Ins. Code
25  § 11658,[9] and failed to attach the IDAs to the Policies,
26

27        [9] The Commissioner has stated that similar side deductible-
    related agreements were required to be filed under Section 11735
28  of the Insurance Code as well as Section 11658.  Commissioner

as required by Cal. Code Regs., tit. 10, § 2268.
Countercl. ¶¶ 71-80, ECF No. 20.

Partial summary judgment is appropriate because
Country Villa has shown that there is no genuine issue
of material fact, and Zurich has failed to provide any
genuine issue of material fact, disputing only matters
of law.  Fed. R. Civ. P. 56(a).

To declare the rights and obligations of the
parties, the Court must determine three issues:
1) Are the IDAs subject to Cal. Ins. Code § 11658 or
Cal. Code Regs., tit. 10, § 2268?;
2) If so, did Zurich violate Sections 11658 or 2268?;
3) If so, what is the appropriate remedy for Zurich's
violation of California law?

> a.  *Are the IDAs Subject to Cal. Ins. Code §*
> *11658 or Cal. Code Regs., tit. 10, § 2268*?

California Insurance Code § 11658 ("Section 11658")
states that "[a] workers' compensation insurance policy
or endorsement shall not be issued by an insurer to any
person in this state unless the insurer files a copy of
the form or endorsement with the rating organization
[i.e., the WCIRB] . . . and 30 days have expired from
the date the form or endorsement is received by the
commissioner from the rating organization without
notice from the commissioner, unless the commissioner
gives written approval of the form or endorsement prior

_____

Appl., DMS Serv., 2011 WL 6345401, at *3-*8.

1    to that time."  Cal. Ins. Code § 11658(a).

2        Section 11658 "requires workers' compensation
3    carriers, before issuing a workers' compensation
4    insurance policy, to file copies of their insurance
5    policies, endorsements and forms with WCIRB; after a
6    preliminary inspection, the WCIRB then sends the filed
7    documents to the CDI for approval," and the CDI "has 30
8    days in which to reject the filed form or endorsement."
9    Monarch, 993 N.Y.S.2d at 279-80.  Under Section 11658,
10   "two regulatory agencies must review and approve all
11   workers' compensation insurance forms," but the
12   Commissioner "has the exclusive authority to regulate,
13   accept, and reject workers' compensation insurance
14   plans."  Id. at 280.

15       Section 2268 of title ten of the California Code of
16   Regulations ("Section 2268") states in relevant part
17   that "[n]o collateral agreements modifying the
18   obligation of either the insured or the insurer shall
19   be made unless attached to and made a part of the
20   policy."  Cal. Code Regs., tit. 10, § 2268.

21       Country Villa argues that the IDAs are subject to
22   Section 11658 because they are ""[a] workers'
23   compensation insurance policy or endorsement" and that
24   the IDAs are subject to Section 2268 because they are
25   "collateral agreements modifying the obligation of
26   either the insured or the insurer."  Zurich disagrees
27   and argues that the IDAs are not subject to either
28   Section 11658 or 2268 because the IDAs are mere

financial agreements with the "primary purpose" of
securing Country Villa's deductible obligations under
the Large Deductible agreements attached to the
insurance policies.  Opp'n 6:4-5.

> i.  *Authority*

There is no controlling California or Ninth Circuit
authority determinative of Country Villa's request for
declaratory relief.  The most analogous cases are an
unpublished California appellate decision, Ceradyne[10]; a
published New York appellate decision, Monarch,[11] which
is currently on appeal; and an unreported trial-level
New York State opinion, National Union Fire.[12]  Most
helpful is material issued by the California Insurance
Commissioner interpreting Sections 11658 and 2268 in
analogous situations.[13]

Zurich argues that a published California appellate
decision, DMS Services,[14] should govern.  However, the
court in DMS Services did not analyze or reach the
issue of whether the collateral agreements in that case

_____

[10] Ceraydne, Inc. v. Argonaut Ins. Co., No. G039873, 2009 WL 1526071 (Cal. Ct. App. June 2, 2009).

[11] Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 993 N.Y.S.3d 275 (App. Div. 2014).

[12] Nat'l Union Fire Co. of Pittsburgh, Pa. v. Source One Staffing, LLC, 36 Misc.3d 1224(A), 2012 N.Y. Slip Op. 51462(U), 2012 WL 3156438 (Sup. Ct. 2012) (Unpub. Disp.).

[13] Commissioner Appl., DMS Serv., 2011 WL 6345401; Feb. 14, 2011, CDI Directive to WCIRB, ECF No. 20-2.

[14] DMS Serv., Inc. v. Sup. Ct., 140 Cal. Rptr. 3d 896 (Ct. App. 2012).

1  were invalid under Section 11658, and <u>DMS Services</u> does

2  not discuss Section 2268 at all.   <u>See</u> <u>DMS Serv.</u>, 140

3  Cal. Rptr. 3d at 905-06.

4       Zurich also cites for support <u>Grove Lumber</u>[15] and

5  <u>HealthSmart</u>[16], two cases[17] from this District that found

6  enforceable arbitration provisions in collateral

7  agreements to workers' compensation insurance despite a

8  Section 11658 argument.   <u>Id.</u> at 8:26-9:4.   Country

9  Villa argues that <u>Grove Lumber</u> and <u>HealthSmart</u> are

10 distinguishable and unpersuasive.   The following is a

11 discussion of the relevant case law.

12                         <u>Grove Lumber</u>

13      In the earlier 2008 case, <u>Grove Lumber</u>, the

14 district court compelled arbitration pursuant to an

15 arbitration provision in a collateral agreement to a

16

17      [15] <u>Grove Lumber & Bldg. Supply, Inc. v. Argonaut Ins. Co.</u>,

18 No. SA CV 07-1396 AHS(RNBx), 2008 WL 2705169 (C.D. Cal. July 7,
   2008).

19
        [16] <u>HealthSmart Pac. Inc. v. Zurich Am. Ins. Co.</u>, No. 08-cv-

20 01207-JVS-RC, at *4-*5 (C.D. Cal. Feb. 20, 2009) (In-Chambers
   Order Granting Defendant Zurich's Motion to Stay Case Pending

21 Action and Compelling Arbitration, ECF No. 31).

22      [17] Both cases were decided prior to <u>Ceradyne</u>, 2009 WL

23 1526071 (Cal. Ct. App. Unpub. June 2, 2009), the only California
   opinion on the issue.   The California appellate court in <u>Ceradyne</u>

24 "accepted amicus curiae briefs from general counsel for
   HealthSmart Pacific, Inc., and counsel for Grove Lumber &

25 Building Supply, Inc.," which the court described as "involved in
   similar litigation/arbitration disputes with their workers'

26 compensation insurers regarding large deductible policies" and
   "[h]aving similar claims and contracts" as those in <u>Ceradyne</u>.

27 2009 WL 1526071, at *4.   After considering those amicus briefs,
   the court agreed that the challenged arbitration clause in the

28 side program agreements "executed months after the inception of
   the actual policy" was "void" under Section 11658.   <u>Id.</u>

workers' compensation insurance policy despite a

Section 11658 argument because the insured failed to

prove that the collateral agreement was subject to

Section 11658.  <u>Grove Lumber</u>, 2008 WL 2705169, at *7

(C.D. Cal. July 7, 2008).  The court explained that

because the insured had "concede[d] in its proposed

statement of facts and conclusions of law . . . that

the [collateral agreement] [was] a 'financial

agreement' and not an insurance policy or endorsement,"

Section 11658 did not apply because Section 11658

requires the filing of only an "insurance policy or

endorsement."  <u>Id.</u> at *7.  The court also found that,

under the FAA, the Section 11658 issue had to be

decided by the arbitration panel.  <u>Id.</u> at *6.

    <u>Grove Lumber</u> is distinguishable, unpersuasive in

its reasoning, and ultimately unhelpful to the Court's

determination of Country Villa's Motion.

    First, the determinative facts of <u>Grove Lumber</u> are

distinguishable from the facts of this case.  Unlike

the insured in <u>Grove Lumber</u> who conceded that the

program agreements were mere financial agreements,

Country Villa disputes such a contention and provides

evidence and argument that the IDAs are insurance

policies or endorsements subject to the filing

requirements of Section 11658.  Additionally, while the

program agreements in <u>Grove Lumber</u> expressly stated

they did not alter or affect the underlying policy or

28

attached endorsements,[18] the IDAs here expressly state they *do* alter or affect the underlying policy and endorsements.[19]

Second, the court in <u>Grove Lumber</u> did not analyze the Section 11658 issue,[20] but preliminarily found that, due to the insured's concession and under the FAA,[21] the Section 11658 argument could not prevent the Court from compelling arbitration in that case.  <u>Id.</u> at *6-*7.

Zurich emphasizes <u>Grove Lumber's</u> idea that because the program agreements did not "address [the insurance company's indemnity obligations for loss or liability," the program agreements were "not an insurance policy or endorsement."  <u>Id.</u> at *7.  The Court finds such an idea unpersuasive, especially in light of California's comprehensive workers' compensation insurance regulatory scheme and the California Insurance Commissioner's interpretation of Section 11658.

In California, "'[w]orkers' compensation insurance

_____

[18] 2008 WL 2705169, at *2 ¶¶ 12-13.

[19] Compl., Ex. B at *267 (IDA) (stating that the "Policy(ies) . . . including all endorsements, extensions, renewals and/or rewrites" "stated in the Specifications are "subject to this Agreement"); <u>id.</u> (IDA) ("This Agreement . . . supersedes any Deductible endorsements to the Policy(ies), prior communications, negotiations, participating plans or letters of election."); <u>see</u> Compl., Ex. A at *230 (Policy) (stating that "[e]ach of the Policies contains a standard-form provision that states: "The terms of this policy may not be changed or waived except by endorsement issued by us to be part of the policy").

[20] <u>Grove Lumber</u> does not discuss Section 2268.

[21] There is no FAA issue here.

programs are to be closely scrutinized and are highly regulated.'" <u>Monarch</u>, 993 N.Y.S.2d at 291 (quoting <u>Ceradyne</u>, 2009 WL 1526071, at *11).[22]  The California "Legislature has created a highly regulated compensation system for injured workers with the twin goals of providing prompt medical treatment and containing costs." <u>Adventist Health v. Workers' Compl. Appeals Bd.</u>, 149 Cal. Rptr. 3d 406, 412 (Ct. App. 2012).  Section 11750.3 explains that the "rating organization," which is the WCIRB, was created "[t]o examine policies, daily reports, endorsements or other evidences of insurance for the purpose of ascertaining whether they comply with the provisions of law and to make reasonable rules governing their submission." Cal. Ins. Code § 11750.3.  Section 2218 of the California Code of Regulations title 10 states that "[a]ll workers' compensation forms must be submitted in duplicate to the [WCIRB] of California for preliminary inspection."  Cal. Code Regs. tit. 10, § 2218.

In light of such a comprehensive regulatory scheme, it is unreasonable to limit Section 11658's filing

---

[22] <u>See also</u> Commissioner Appl., <u>DMS Serv.</u>, 2011 WL 6345401, at *4-*5 (stating that "[w]orkers' compensation insurance is a highly regulated area of insurance" and that the "regulation of rates is subject to an 'open' rating system that involves a complex analysis of multiple interrelated factors" and involves "an open rating system" where "employer can negotiate in the market place the deductible amounts best suited to their particular needs [such as offering] larger deductible amounts . . . and lower premiums for large employers who are able to assume a portion of the risk of loss").

requirements to the narrow sliver of an insurance
agreement regarding only the insurers "indemnity
obligations for loss or liability." <u>Grove Lumber</u>, 2008
WL 2705169, at *7.  Nothing in the language of Section
11658, or the language of any other related statutes or
regulations, requires such a stingy interpretation of
Section 11658.

On the contrary, Section 11658 itself clearly
states that not only the insurance policy itself, but
also *endorsements* to the insurance policy must be
filed.  Cal. Ins. Code § 11568.  An endorsement "is an
amendment to or modification of an existing policy of
insurance," that "may be attached to a policy at its
inception or added during the term of the policy," and
that "'may alter or vary *any term or condition* of the
policy.'"  <u>Adams v. Explorer Ins. Co.</u>, 13 Cal. Rptr.
4th 438, 450-51 (Ct. App. 2003) (emphasis added).  As
such, an endorsement, which must be filed, is not
limited to provisions addressing the insurer's
indemnity obligations, but may be any agreement that
alters or adds to any term or condition of an insurance
policy.  <u>See</u> <u>id.</u>

The California Insurance Commissioner has
interpreted Section 11658.[23]  With regard to an

---

[23] The CDI, and ultimately the Commissioner, is charged with
enforcing the statutes regulating the workers' compensation
insurance industry.  Commissioner Appl., <u>DMS Serv.</u>, 2011 WL
6345401, at *1-*5; <u>see</u> <u>Ass'n for Retarded Citizens v. Dep't of
Developmental Serv.</u>, 696 P.2d 150, 38 Cal.3d 384, 391 (1985)

agreement analogous to the IDAs here, where the insured "agree[d] to reimburse or otherwise pay the insurer for loss adjustment expenses and/or other claims or policy related expenses," and where the agreement included terms pertaining to "indemnity/loss obligation, payment or reimbursement obligation, allocated loss adjustment expenses (ALAE), other expenses or fees, the timing of reimbursements or payments to the insurer, collateral, circumstances that constitute a default by the insured, choice of law, arbitration, and other matters that are material to the insured's and insurer's obligations under a workers' compensation insurance policy," the Commissioner concluded that such an agreement was subject to the filing requirements of Section 11658. In the Matter of Zurich Am. Ins. Co., File No. DISP-2011-00811, Notice of Hearing and Order to Show Cause ("CDI OSC re: Zurich") 4:23-5:23 (Feb. 27, 2012), ECF No. 75-3.  The Commissioner's position flies in the face of Grove Lumber's interpretation of Section 11658.

HealthSmart

In HealthSmart, Zurich moved to stay the action and compel arbitration under the FAA, a situation analogous to Grove Lumber.  HealthSmart Pacific, Inc. v. Zurich Am. Ins. Co., No. 08-cv-01207-JVS-RC, at *1-*2 (C.D. Cal. Feb. 20, 2009) (In-Chambers Order Granting

---

("[T]he construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight.").

Defendant Zurich's Motion to Stay Case Pending Action
and Compelling Arbitration, ECF No. 31). Healthsmart
blindly relied on Grove Lumber, citing no California
law, and did not analyze the Section 2268 argument.  As
such, the Court finds that Healthsmart is, like Grove
Lumber, distinguishable, unpersuasive, and unhelpful.

Ceradyne

Ceradyne, an unpublished California appellate
opinion, is the only California opinion directly on
point.[24]  In Ceradyne, the insurance company provided a
workers' compensation insurance plan to a large
corporation.  2009 WL 1526071, at *1.  Several months
after the insurance policy took effect, the parties
entered into an Insurance Program Agreement ("IPA"),
which had not been disclosed to or pre-approved by the

---

[24] California Court Rule 8.1115(a) states that "an opinion
of a California Court of Appeal . . . that is not certified for
publication or ordered published must not be cited or relied on
by a court or a party in any other action.  District courts in
this District generally decline to consider an unpublished
California decision when there is other published persuasive or
binding authority on which to rely.  See, e.g., Negrete v.
Allianz Life Ins. Co. of N. Am., 927 F. Supp. 2d 870k 892 (C.D.
Cal. 2013) (rejecting unpublished California court opinions
because the unpublished opinions were contrary to published
California court opinions).  However, when there is no other
binding authority on which to rely, federal courts may consider
unpublished California opinions as persuasive authority.  Emp'rs
Ins. of Wausau v. Granite St. Ins. Co., 330 F.3d 1214, 1220 n.8
(9th Cir. 2003) (stating that the Court "may consider unpublished
state decisions, even though such opinions have no precedential
value" and that unpublished opinions, "while certainly not
dispositive of how the California Supreme Court would rule," may
still "lend[] support" to a certain position regarding California
law); Washington v. Cal. City Correction Ctr., 871 F. Supp. 2d
1010, 1028 n.3 (E.D. Cal. 2012) ("The Court may cite unpublished
California appellate decisions as persuasive authority.").

33

Insurance Commissioner or the WCIRB.  _Id._  The IPA
contained, among other clauses, arbitration and forum
selection clauses.  _Id._  The New York state trial court
refused to stay or dismiss the case pursuant to the
arbitration and forum selection clauses in the IPA
because the court found that "the entire IPA was void
because it had not been disclosed or approved as
required by section 11658."  _Id._  The appellate court,
in a thorough and well-reasoned analysis,[25] found that
the arbitration and forum selection clause challenged
by the insured was void for failure to file the IPAs
under Section 11658.  _Id._ at *11-*12.

   The insurance policies and IPAs in _Ceradyne_ are
similar in relevant aspects to the policies and IDAs
here.  _See id._ at *2-*3.  The parties here also make
similar arguments to those considered by _Ceradyne_.
Significantly, the insurer in _Ceradyne_ argued, as
Zurich argues here, that the IPA was a mere financial
document because it did not address the insurer's
indemnity obligations for loss or liability.  _Id._  The
_Ceradyne_ court "disagree[d] with this narrow
interpretation of the disclosure requirements for

---

[25] The appellate court accepted amicus curiae briefs from
HealthSmart Pacific, Inc. and Grove Lumber & Building Supply,
Inc., which the _Ceradyne_ court described as companies "involved
in similar litigation/arbitration disputes . . . [h]aving similar
claims and contracts."  2009 WL 1526071, at *4.  _Ceradyne_'s
robust, clear, and well-reasoned analysis, and consideration of
these amicus briefs, makes _Grove Lumber_ and _HealthSmart_ further
unpersuasive.

purposes of section 11658." _Id._  The court pointed out
that "a standard workers' compensation policy includes
more than just a statement of the indemnity
obligations," and "[t]o adequately and efficiently
regulate and monitor rates and insurance companies, the
Commissioner and the WCIRB must review more than
indemnity and liability terms," as employers in
California "have no choice but to secure workers'
compensation insurance . . . and, consequently, the
entire system is highly regulated." _Id._ at *11.

     The _Ceradyne_ court found that the IPAs were subject
to Section 11658's filing requirements because the
language of both the policy and the IPAs made it clear
that the IPAs "contain[ed] significant details
regarding the terms of insurance." _Id._ at *8; _see also_
_id._ at *10 ("[T]he IPA looks very much like part of an
insurance contract," as its "primary function is
related to Argonaut's ability and obligation to provide
insurance."). Specifically, the IPA, like the IDA
here, repeated terms found in the policy, and "defined
itself" "as part of" the insurance program. _Id._ at *7.
The IPA also "contained several new items regarding how
payments are to be made and maintained for the policy
to continue in effect," including requests for
security, $500,000 in collateral, and a "Loss Deposit
Fund . . . to pre-fund the payment of Paid Losses and
[Allocated Loss Adjustment Expenses]." _Id._  The court
concluded: "[t]o accept [the] claim the IPA is purely a

35

1   . . . financial document would require us to ignore the
2   actual terms of the agreement." Id. at *10. The IPAs
3   were unenforceable under Section 11658. Id. at *11.

4                   Source One

5     A related opinion, National Union Fire Co. of
6   Pittsburgh, Pa. v. Source One Staffing, LLC, 36 Misc.3d
7   1224(A), 2012 N.Y. Slip Op. 51462(U), 2012 WL 3156438
8   (Sup. Ct. 2012) (Unrep. Disp.), was issued in 2012 by a
9   trial-level New York state court. In Source One, the
10   insurance company and the insured entered into
11   insurance policies and a separate Payment Agreement,
12   which required the insured "to provide significant
13   collateral to cover losses on claims under the Policies
14   within the deductible" where the "amount of deductible
15   required under the Payment Agreement was to be
16   calculated in part based on respondent's loss history
17   for claims under the Policies." 2012 WL 3156438, at
18   *1. The insurer argued that the arbitration clause in
19   the Payment Agreement was unenforceable because it had
20   not been filed with the WCIRB, as required by Section
21   11658. Id. The insurer argued that the Payment
22   Agreement was not a policy or endorsement required to
23   be filed within the meaning of the Insurance Code. Id.

24     The court in Source One concluded that the Payment
25   Agreement was required to be filed under Section 11658,
26   and attached to the policies under Section 2268,
27   because it was "clear" by the terms of the Payment
28   Agreement "that the Payment Agreement forms a part of

the workers compensation policies." Id. at *5-*7.  The
court declined to apply the rationale of Grove Lumber
and found that Ceradyne was "consistent with a
directive issued by the California Department of
Insurance on February 14, 2011 to the [WCIRB] . . .
regarding the kind of workers compensation collateral
agreements that are at issue in this matter," in which
the Commissioner stated that "under California law,
such agreements were required to be filed with the
WCIRB." Id. at *5-*6.  Because the Payment Agreement
was not filed or attached, it was void and
unenforceable under California law.  Id. at *5-*7.

Monarch

The only analogous published opinion is Monarch
Consulting, Inc. v. Nat'l Union Fire Ins. Co. of
Pittsburgh, Pa., 933 N.Y.S.2d 275 (App. Div. 2014), an
opinion by a New York state lower-appellate-level
court.  In Monarch, the appellate court had "to decide
whether three insureds are compelled to arbitrate their
disputes with their workers' compensation insurance
carrier even though the carrier failed to file the
arbitration agreements, contained inside agreements to
the insurance policies, with the California Department
of Insurance as California law requires."  933 N.Y.S.2d
at 279.  The facts of Monarch are analogous.  After the
insurance company issued the policies, it sent to the
insured additional agreements regarding, among other
things, credit issues, payment obligations, deductible

loss reimbursement terms, terms of default, and dispute resolution procedures.  Id. at 280.

The Monarch court considered the February 14, 2011, Directive issued to the WCIRB by the CDI and the CDI's enforcement action against Zurich.  Id. at 280-82.  The court agreed with the CDI's rejection of Zurich's argument that the payment agreements were mere financial agreements.  Id.  The court stated: "We note that the CDI order to show cause and settlement make clear that the CDI does, in fact, believe that side agreements are subject to regulatory statutes, and therefore, that those agreements are void if insurers fail to file them," and that "the CDI's interpretation of the Insurance Code receives weight under" California law.  Id. at 287.  The Monarch court also found Ceradyne, though unpublished, to be persuasive authority which the court "consider[ed] [for] its reasoning without relying on it as controlling authority."  Id. at 288.  The court concluded that the payment agreements "qualif[ied] as policy endorsements or agreements collateral to the policies" and thus "should have [been] submitted . . . to the CDI for approval."[26]  Id. at 289.

_____

[26] See also Monarch, 993 N.Y.S.2d at 290 ("[T]he payment agreements modify the parties' obligations under the policies in even more substantive ways.  For example, as the Monarch court noted, the agreements provide that if the insureds defaulted under the agreements, National Union had the right unilaterally to "change any or all unexpired Policies" from deductible to non-deductible plans, and to concomitantly increase the premiums.

## ii.  *Analysis*

In light of the statutory and regulatory language; the highly regulated nature of California's workers' compensation insurance scheme; the language of the Policies and IDAs; the analogous facts and persuasive reasoning of <u>Ceradyne</u>, <u>Source One</u>, and <u>Monarch</u>; and the Commissioner's interpretation of Sections 11658 and 2268, the Court finds that the IDAs are subject to Section 11658's filing requirements and Section 2268's attachment requirements.

### Section 11658

Section 11658 states in relevant part that "[a] workers' compensation insurance policy or endorsement shall not be issued by an insurer to any person in this state unless the insurer files a copy of the form or endorsement with the rating organization . . .  and 30 days have expired from the date the form or endorsement is received by the commissioner from the rating organization without notice from the commissioner, unless the commissioner gives written approval of the form or endorsement prior to that time."  Cal. Ins. Code § 11658(a).

The IDAs have the same determinant characteristics

---

The insureds' payment obligations also included "any amount paid by [National Union] to a claimant on [the insureds'] behalf." These changes directly alter the policies, and indeed, directly implicate the insureds' reasons for obtaining the policies in the first place. To accept National Union's claim that the payment agreements are simply secondary financial documents would require this court to ignore the actual terms of the agreements.").

as the side agreements in <u>Ceradyne</u>, <u>Source One</u>, and <u>Monarch</u>, which were subject to Section 11658's filing requirements.   Most significantly, the language of the Policies and the IDAs establish that the IDAs are part of the insurance program created by the Policies. Specifically, the Policies state that a later issued endorsement may "change[] or waive[]" the "terms of th[e] policy, and the IDAs state that the "Policy(ies) . . . including all endorsements, extensions, renewals and/or rewrites" stated in the IDA's Specifications are "subject to" the IDA.   Compl., Ex. A at *230; Compl., Ex. B at *267.   The IDAs contain terms related to Country Villa's deductible and cost obligations under the Policies; create a new Aggregate Deductible; and define terms clearly tied to the Policies.   Compl., Ex. B at *268-*84.   The IDAs constantly refer to the Policy(ies) and fill out several policy terms.   <u>Id.</u> The IDAs simply cannot be understood as a stand alone financial agreement separate from the related Policy.[27]

The Commissioner's interpretation of Section 11658 further convinces the Court that the IDAs are subject to Section 11658's filing requirements.   <u>See</u> Commissioner Appl., <u>DMS Serv.</u>, 2011 WL 6345401, at *6-*9.   The Commissioner, in its Application to File an Amicus Curiae Brief in <u>DMS Services</u>, stated that

_____

[27] The language of the IDAs (even the title, "Incurred _Deductible_ Agreement") makes clear that the IDAs are "part of the insurance contract, not a separate side financial agreement." <u>Ceradyne</u>, 2009 WL 1526071, at *7.

similar side deductible agreements issued by Zurich to
DMS Services were required to be filed under Section
11658 because the agreements "govern integral aspects
of the insurance relationship stemming from the
treatment of deductibles," and "[n]one of the
deductible agreements . . . are stand alone documents;
each can be understood only by reference to the
underlying policies." Id. at *3-*4; see id. at *1-*11.
The Commissioner also noted that the sheer length of
the agreements, as well as their complex terms related
to the underlying insurance policy, made it clear that
they were "not simply the 'mechanics of payment.'" Id.
at *7 n.2.

Section 2268

Section 2268 of the California Code of Regulations,
title 10, requires that "[n]o collateral agreements
modifying the obligation of either the insured or the
insurer shall be made unless attached to and made a
part of the policy." Cal. Code Regs., tit. 10, § 2268.
The IDAs, as endorsements, clearly "modify[] the
obligation of either the insured or the insurer" and
are thus subject to Section 2268's attachment
requirements. Cal. Code Regs., tit. 10, § 2268; see
Feb. 14, 2011, CDI Directive to WCIRB, ECF No. 20-2
("The Insurance Commissioner has prohibited the use of
collateral agreements, which is synonymous with the
term 'side-agreement,' concerning workers' compensation
insurance unless they are attached to the policy.").

b.  *Did Zurich Violate California Law?*

Zurich admits that it did not file the IDAs with the WCIRB, as required by Section 11658, and that the IDAs were never approved by the CDI in any other manner.  Stip. ¶¶ 4-5; Zurich's Facts ¶¶ 7-8 (undisputed).  Zurich thus violated Section 11658 by failing to file the IDAs with the WCIRB before issuing the IDAs.  Cal. Ins. Code § 11658.

Zurich does not dispute the fact that the IDAs were not attached to the Policies, as the IDAs were entered into after the Policies were issued.  See Compl., Ex. B.  As such, Zurich also violated Section 2268 by failing to attach the IDAs to the related Policy at the time the Policy was issued.  Cal. Code Regs., tit. 10, § 2268; see Feb. 14, 2011, CDI Directive to WCIRB, at 2, ECF No. 20-2.

c.  *Proper Remedy*

Section 11658(a) states that a workers' compensation insurance policy or endorsement "*shall* not be issued by an insurer" unless it is filed with the WCIRB and in one way or another approved by the Commissioner, and subsection (b) states that issuing an unapproved policy or endorsement "is unlawful."  Cal. Ins. Code § 11658 (emphasis added).  Section 11658 is clear: the unfiled and unapproved IDAs are illegal under Section 11658 and therefore void as a matter of law.  Kremer v. Earl, 27 P. 735, 736 (Cal. 1891) (stating that "[i]t is not necessary that the act

itself . . . declare in express words" that a contract
in violation of the act is "void"); see Monarch, 993
N.Y.S.2d 275, 290-92; Ceradyne, 2009 WL 1526071, at
*11-*12.

Zurich argues that the IDAs, though illegal and
void under California law, should nevertheless be
enforced in equity.

                    i.  *Equitable Enforcement*

Under California law, "[n]o court will lend its aid
to give effect to a contract which is illegal, whether
it violates the common or statute law." Kremer, 27 P.
at 736 (Cal. 1891).  "If, upon a review of all the
state legislation upon the subject, . . . a contract
appears to contravene the design and policy of the
laws, a court of equity will not enforce it." Id.

Yet, in "compelling cases," California courts have
enforced illegal contracts "in order to avoid unjust
enrichment and a disproportionately harsh penalty upon
the plaintiff." Malek v. Blue Cross of Cal., 16 Cal.
Rptr. 3d 687, 707 (Ct. App. 2004) (internal quotation
marks and alterations omitted).  "[T]he extent of
enforceability and the kind of remedy granted depend[s]
upon a variety of factors, including the policy of the
transgressed law, the kind of illegality[,] and the
particular facts." Id.

Under the relevant equitable factors, the illegal
IDAs should not be enforced.

First, there is no risk of Country Villa's *unjust*

enrichment because an insurer's issuance of an illegal contract, even if it results in enrichment to the insured, does not result in *unjust* enrichment because the insured did nothing wrong, and the insurer should have known its own legal duties.  See Ceradyne, 2009 WL 1526071, at *11-*12.  Furthermore, as Country Villa explains in its Reply, if the IDAs are void, Country Villa is still liable to Zurich under the actual insurance policies and attached large deductible endorsement, as well as by statute, to reimburse Zurich for claims paid within the deductible.  Reply 18:15-20.

Second, refusing to enforce the IDAs is not an unduly harsh penalty on Zurich, because Zurich knew or should have known its filing requirements under California law, and enforcing the IDAs would encourage illegal activity.  Furthermore, because Country Villa remains liable to Zurich under the policies, attached endorsements, and California law, refusing to enforce the IDAs is not unduly harsh.  See Monarch, 993 N.Y.S.2d at 291.

Third, the policy behind "the transgressed law" strongly counsels against enforcing the IDAs, as enforcing the IDAs "would defeat the statutory purpose" of Sections 11658 and 11735 by "allow[ing] an insurance company to bypass the governmental review process by simply waiting . . . after the policy has gone into effect to introduce additional or modified terms to its insurance program."  Ceradyne, 2009 WL 1526071, at *11.

44

As the <u>Ceradyne</u> court noted, "[i]t cannot be overlooked that workers' compensation coverage is not optional for the employer." <u>Id.</u>

Fourth, Zurich is the party at fault in this situation, as Zurich knew or should have know of its filing requirements under California law; it would not be equitable to allow the party who created the illegality to enforce the illegal contact. <u>See</u> <u>id.</u>

Finally, the IDAs should not be enforced under California's "settled rule" that a contract in violation of a statute enacted for the protection of the public should not be enforced. <u>Napa Valley Elec. Co.</u>, 28 Cal. App. at 478-79. The IDAs violate Sections 11658 and 2268, which are laws and regulations "enacted for the protection of the public," as California's workers' compensation insurance scheme protects the public workforce, as well as the insured employers who are required by law to purchase workers' compensation insurance.[28] <u>See</u> <u>id.</u> (stating that, with regard to such a contract, "the court will refuse the plaintiff any relief and will leave the parties where it finds them," "not to help the defendant . . .; not for the sake of either party, but for the sake of the law itself").

ii. *Severability*

---

[28] <u>See Monarch</u>, 993 N.Y.S.2d at 291 ("[T]he 'review and preapproval safeguards [in California's workers' compensation insurance regulatory scheme] were created to protect both employers and employees.'"); <u>see</u> <u>Ceradyne</u>, 2009 WL 1526071, at *11.

1   Zurich argues that certain portions of the IDA
2   should be severed, rather than voiding the entire IDA.
3   The Court agrees that this argument is, as Country
4   Villa states, "nonsensical," Reply at 23:1-2, because
5   the entire IDA, not merely certain portions of the IDA,
6   is required to be filed with the WCIRB, and Country
7   Villa challenges the IDAs in their entirety. <u>See</u> Cal.
8   Ins. Code § 11658; Cal. Code Regs., tit. 10, § 2268.
9   As such, the IDAs, along with their Specifications, are
10  void as a matter of law and unenforceable in their
11  entirety.

**V. CONCLUSION**

13  Based on the foregoing, the Court **GRANTS** Country
14  Villa's Motion for Partial Summary Judgment [75].

15  **IT IS HEREBY ORDERED** that Partial Judgment be
16  entered in favor of Country Villa as to the Fifth Count
17  of Country Villa's Counterclaim [20], and

18  **IT IS HEREBY DECLARED** that the 2004 and 2005
19  Incurred Deductible Agreements, along with the 2004-
20  2011 Specifications to the Incurred Deductible
21  Agreements, all of which are attached as Exhibit B to
22  Zurich's Complaint [1], were, in their entirety, void
23  *ab initio* and are unenforceable.

24  **IT IS SO ORDERED.**

25  DATED: July 9, 2015        RONALD S.W. LEW
                               _____
26                             **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge
27
28

46